## Appeal of GROSVENOR ATTERBURY.     Docket No. 195.

A leasehold is property and its cost and increase in value prior to March 1, 1913, are properly capital. The owner of the leasehold is entitled to take deductions for exhaustion of such leasehold in the same manner as he would with any other exhaustible property.

Where the March 1, 1913, value of a leasehold is determined, and that value is used as the basis for computing gain on the sale of a lease, the taxpayer is entitled to take deductions for exhaustion on the same basis.

Submitted October 30, 1924; decided December 11, 1924.

*John A. Kratz, Esq.*, for the taxpayer.

*A. Calder Mackay, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

This appeal is taken from a determination by the Commissioner of a deficiency amounting to $4,618.06 in income taxes for the years

1917 to 1920, inclusive. The asserted deficiency is contested on allegations that the Commissioner erred in holding that a lessee is not entitled, under the Revenue Acts of 1916, 1917, 1918, and 1921, to an allowance for depreciation based on the value of his lease as of March 1, 1913, if acquired prior thereto, but, where the leasehold was acquired for business purposes for a specified sum prior to such date, the lessee may deduct only an aliquot part of such sum each year, based on the number of years the lease has to run. The appeal was submitted on stipulated facts, from which the Board makes the following

FINDINGS OF FACT.

1. The taxpayer is an individual engaged in business in New York City. On May 1, 1903, he acquired for business purposes a leasehold to the premises at No. 20 West Forty-third Street, New York City, for the sum of $33,804.80. At the time of acquisition, the leasehold had a term of life of 19 years, expiring May 1, 1922.

2. On March 1, 1913, the leasehold had a conceded value of $58,500. On June 17, 1920, the taxpayer sold the leasehold, which had a remaining life of 1 year 10 months and 13 days, for $16,825.

3. In estimating the gain upon the sale of said leasehold by the taxpayer on June 17, 1920, the Commissioner distributed the exhaustion of the March 1, 1913, value of $58,500 over the period from March 1, 1913, to June 17, 1920, the date of sale, for the purpose of ascertaining the residual value of said leasehold as of the latter date. The computation of the Commissioner was as follows:

| Period | Months effective | Depreciation sustained |
|---|---|---|
| Mar. 1 to Dec. 31, 1913 | 10 | $5,318.20 |
| Jan. 1 to Dec. 31, 1914 | 12 | 6,381.84 |
| Jan. 1 to Dec. 31, 1915 | 12 | 6,381.84 |
| Jan. 1 to Dec. 31, 1916 | 12 | 6,381.84 |
| Jan. 1 to Dec. 31, 1917 | 12 | 6,381.84 |
| Jan. 1 to Dec. 31, 1918 | 12 | 6,381.84 |
| Jan. 1 to Dec. 31, 1919 | 12 | 6,281.84 |
| Jan. 1 to June 17, 1920 | 5$\frac{1}{15}$ | 2,970.51 |

Total accrued depreciation to date of sale_____ $46,579.75
Balance, residual value on date of sale_____ 11,920.25

Total March 1, 1913, value as allowed_____ 58,500.00

Total amount realized on sale of leasehold June 17, 1920_____ 16,825.00
Residual value on date of sale as shown above_____ 11,920.25

Balance subject to income tax_____ 4,904.75

4. In computing the deductions which the taxpayer was allowed upon income for the years 1917 to 1920, inclusive, the Commissioner rejected the value of the leasehold on March 1, 1913, viz: $58,500, and in its stead, took as the basis the 1903 cost of the leasehold, viz: $33,804.80. The taxpayer, in his income tax returns for the years 1917 to 1920, inclusive, deducted from the gross income of each year $3,756.09 for the exhaustion of the leasehold and of the improve-

ments placed thereon prior to March 1, 1913. This amount was allocated as follows:

Depreciation of improvements_____ $1,533.87
Depreciation of leasehold_____ 2,222.22

    Total_____ 3,756.09

The computation of this amount was made by placing the undepreciated cost of the leasehold, on March 1, 1913, at $33,804.80, its original cost and dividing that amount by nine, the number of years the lease had to run after March 1, 1913. The Commissioner allowed a deduction for depreciation of $1,779.20 for each of the years 1917, 1918, and 1919, and $825.33 for that portion of the year 1920 prior to the date of sale of the leasehold. This deduction was computed by dividing $33,804.80, the investment in the lease as of May 1, 1903, by nineteen, the number of years of life of the leasehold from the last-mentioned date.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final decision of the Board will be settled on consent or on seven days' notice.

### OPINION.

GRAUPNER: The taxpayer contends that he is entitled to relief in one of the following alternatives:

(a) If the Commissioner is correct in computing the gain of $4,904.75 on the sale of the leasehold, then the taxpayer is entitled to take as deductions from income the same amount as is used by the Commissioner in computing said gain, for the several years involved; or

(b) If the Commissioner is correct in holding that the taxpayer is entitled to deduct from his income an annual depreciation of only $1,779.20, based on the May 1, 1903, cost of the lease of $33,804.80, the total depreciation sustained on this basis from March 1, 1913, to the date of sale, June 17, 1920, or $12,983.20, should be deducted from the March 1, 1913, value of the leasehold of $58,500, to get the residual value as of the date of sale.

The Commissioner contends that the depreciation claimed by the taxpayer is not a proper deduction within the meaning of section 214(a)(8) of the Revenue Act of 1918, or section 214(a)(8) of the Revenue Act of 1921. In making this contention, the Commissioner asserts that he has consistently held that a lessee is not entitled to an allowance for depreciation based upon the value of a lease as of March 1, 1913, if acquired prior thereto, but, if a leasehold was acquired for business purposes, the purchaser has been allowed as a deduction in his income tax return an aliquot part of the purchase price each year, based on the number of years the lease has to run. This deduction has not been considered an exhaustion of property within the meaning of section 214(a)(8) of the Revenue Acts of 1918 and 1921, but has been allowed upon the theory that the amount paid for a lease constitutes advance rental and that, as such, it

would ordinarily be a business expense, and could be deducted in annual installments over the period of life of the lease.

The provisions of section 5(a)(7) of the Revenue Acts of 1916 and 1917 relating to allowance of deductions in computing net income are identical in language and read as follows:

A reasonable allowance for the exhaustion, wear and tear of property arising out of its use or employment in the business or trade.

Section 214(a)(8) of the Revenue Act of 1918 was changed in language to read as follows:

A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.

Section 214(a)(8) of the Revenue Act of 1921 contains added language so that it reads:

A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. In the case of such property acquired before March 1, 1913, this deduction shall be computed upon the basis of its fair market price or value as of March 1, 1913.

It should be noted that, in all four of the sections above cited, the acts provide for *deductions* to be *allowed* and not for depreciation.    In the light of this language, the attempt of the Commissioner to distinguish between *deduction* and *depreciation* in making *allowances* on leaseholds seems to be without reason and illogical.    The statutes do not use the word *depreciation*.    The term *exhaustion*, used in all four sections, properly describes the reduction in the remaining life of a leasehold as it approaches, year by year, its termination.

It should also be noted that all four of the sections quoted use the word *property*, without limitation, restriction, or definition of that term.    A leasehold has been long recognized in law as property.    It answers all the requirements of the simple definition which describes property as " the exclusive right to possess, enjoy and dispose of a thing."    Certainly a leasehold of the character here involved is one of the most important elements of property used in trade or business, because without the right to occupy the business premises the taxpayer could conduct no business nor could he derive a gain from a sale thereof upon which a tax could be imposed.    We, therefore, can not escape the conclusion that the taxpayer is entitled to take a deduction for each of the years involved for *exhaustion* of his leasehold.

From the stipulated facts we find that the leasehold cost the taxpayer on May 1, 1903, $33,804.80, and then had a prospective life of 19 years.    The Commissioner concedes that the taxpayer is entitled to deduct one-nineteenth of this valuation, or $1,779.20, each year.    This he does on the assumption that the payment of $33,804.80 for the leasehold was a lump advance payment for rent, and that it may be distributed over the 19 years' term in aliquot parts.    This concession is artificial and does not recognize the right conferred upon the taxpayer by the revenue acts.    It does not concede the taxpayer the right of *exhaustion* which is his under the law.    We can not believe that money expended for the purchase or improvement of *property* is anything else than capital investment.    When money is used to purchase a class of property designated as a leasehold, it is

nevertheless a capital investment and can not be classified as an advance payment on rent.

The stipulation concedes a March 1, 1913, value of $58,500 to the leasehold, but does not disclose how the increase in valuation between May 1, 1903, and March 1, 1913, was produced. The Commissioner recognized this value for the purpose of calculating a gain in the sale of the leasehold. But, if it is recognized for that purpose, it must be conceded for all other purposes relating to the calculation of income taxes. The $58,500 value was capital on March 1, 1913, and the taxpayer can not be deprived of that capital in an arbitrary manner. We are therefore confronted with the accepted fact that on March 1, 1913, the taxpayer owned property of a value of $58,500 which, at the expiration of nine years and two months would be exhausted and without value. To accept the method of computation for allowance of deductions used by the Commissioner in the present case would mean that, at the end of the leasehold term, the taxpayer would have been compelled to accept a loss without recourse, had he retained the lease. To permit a calculation for gain based on March 1, 1913, value, which included an exhaustion allowance on that value, and to disallow the deduction of the very exhaustion upon which the taxable gain is based is manifestly unfair and unreasonable.

The four revenue acts contemplate a reasonable allowance for exhaustion. When the taxpayer asserts his claim for allowances from year to year, he makes that assertion as a matter of right conferred by law and is entitled to deduct a reasonable amount or, in other words, an amount which will compensate him for his property when it becomes exhausted by lapse of time. However, the amount claimed must be *reasonable* in all events in order to justify the deduction.

The taxpayer's contention (a) set forth at the beginning of the opinion is allowed, while his second contention (b) is disallowed. The taxpayer is entitled to a deduction of an aliquot part of the March 1, 1913, value of the leasehold in question for the years 1917, 1918, and 1919, and to a proportionate part for the year 1920. The computation should be made upon the basis of a value of $58,500 and a term of life of nine years and two months for the leasehold.