492

POWELL COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11945.   Promulgated June 8, 1928.

*John E. Hughes, Esq.*, and *William Cogger, Esq.*, for the petitioner.

*Bruce A. Low, Esq.*, and *Geo. S. Herr, Esq.*, for the respondent.

494

OPINION.

SIEFKIN: The respondent, in effect, renewed the motion once overruled, to dismiss the proceeding for want of jurisdiction on the ground that no deficiency has been determined against the petitioner for the fiscal year ended March 31, 1921, within the meaning of section 273 of the Revenue Act of 1924, and that no notice of a deficiency has been issued within the meaning of section 274 (a) of that Act. Section 273 of the Revenue Act of 1924 provides, in part, that the term " deficiency " means:

(1) The amount by which the tax imposed by this title exceeds the amount shown as the tax by the taxpayer upon his return; * * *

(2) If no amount is shown as the tax by the taxpayer upon his return, or if no return is made by the taxpayer, then the amount by which the tax exceeds the amount previously assessed (or collected without assessment) as a deficiency; * * *

Under date of June 14, 1921, the petitioner filed a corporation income and profits-tax return for the fiscal year in question showing a total tax due in the amount of $946.58.

On January 16, 1922, the petitioner filed an amended income and profits-tax return for the same period showing a total tax due of $11,505.32. With this return was sent a letter in the following terms:

We submit herewith amended returns for the years ended March 31st, 1917, to 1921, inclusive, in compliance with Treasury Decision No. 3220, but in accordance with the provisions of Section 250–D of the Revenue Act of 1921, we respectfully protest against any assessment being made until such time as an oral hearing can be had and additional data submitted in support of our application for assessment under Sections 327 and 328 of the Revenue Law of 1918.

We. also claim that insufficient depreciation has been taken on the returns submitted herewith but on account of the time limit fixed by Treasury Decision mentioned above, we are unable at this time to make the necessary corrections. Additional data in support of this claim will also be submitted at the time when the hearing of this case is held in Washington.

On May 15, 1922, the petitioner, pursuant to the provisions of Treasury Decision 3310, filed another amended income and profits-tax return for the same period disclosing a total tax due in the amount of $11,555.32.

On December 21, 1922, the petitioner filed a claim for the abatement of income and profits taxes for the year in question in the amount of $10,558.74.

The respondent, by letter dated May 5, 1925, advised the petitioner that an audit of its return disclosed a total tax due of $11,007.88 and an overassessment of $547.44.

A letter of December 19, 1925, from the respondent sustained the decision in the letter of May 5 and rejected the petitioner's claim for abatement of $10,588.74. It was. upon this letter that the appeal to the Board was based.

The respondent contends that since the total tax liability for the fiscal year ended March 31, 1921, has been fixed at $11,007.88, and since upon its amended return of May 15, 1922, the petitioner has shown a tax due in the amount of $11,555.32, there has been no determination of a deficiency by the respondent. The respondent insists that the return of the petitioner filed on June 14, 1921, does not constitute the original return of the petitioner.

In *E. L. Harris*, 5 B. T. A. 1026, we stated:

* * * We have heretofore held that the original return is the return required by law and that there is no statutory authority for the making or acceptance of an amended return. *Appeal of National Refining Co.*, 1 B. T. A. 236; *Appeal of Mabel Elevator Co.*, 2 B. T. A. 517. The return referred to in section 273 of the Revenue Act of 1924 is the original return—the return which starts the tolling of the statute.

In that case the facts were as follows: The petitioner filed his return for the year 1923. Later he filed an amended return on which was shown an amount of tax in excess of the amount shown on the

original return. The Commissioner determined a deficiency in the amount of the excess and the petitioner appealed. The Commissioner moved to dismiss upon the ground that he had not determined a deficiency and that, therefore, the Board had no jurisdiction. It was held that inasmuch as the Commissioner had determined a total liability in excess of the amount shown on the original return to be due, there was a deficiency and that the Board had jurisdiction.

We are, therefore, of the opinion that the return filed by the petitioner on June 14, 1921, was the original return of the petitioner, and since the respondent has determined a tax liability greater than the amount shown thereon, a deficiency has been determined. However, even if either of the amended returns were considered the return, we are of the opinion that the respondent has determined a deficiency.

In *John Moir*, 3 B. T. A. 21, we stated:

The Commissioner in his answer pleaded that the Board is without jurisdiction to hear and determine these appeals for the reason that he has not, since the passage of the Revenue Act of 1924, determined a deficiency in tax in respect to these taxpayers. The Commissioner's position in this plea is that the taxpayers have been assessed on the basis of the tax shown upon the taxpayers' returns, and that a deficiency is only an amount of tax determined by him to be due in excess of that shown on the taxpayers' return. This is true in the ordinary case, but in cases in which the taxpayer shows an amount of tax upon his return but does not admit that that amount of tax is due and collectible, it is the amount which he admits to be due and not the amount which appears upon the face of his return which is deemed the starting point in the computation of a deficiency. *Appeal of Continental Accounting & Audit Co.*, 2 B. T. A. 761.

In the instant proceeding we find that in accordance with Treasury Decision 3320, the petitioner filed an amended return showing a tax due in the amount of $11,505.32, but in a letter accompanying the return, the petitioner denied that this amount of tax was due.

On May 15, the petitioner, pursuant to the provisions of Treasury Decision 3310, filed another amended return showing a total tax due in the amount of $11,555.32. Apparently no protest was attached to this return but on December 21, 1922, the petitioner filed a claim for abatement of income and profits taxes in the amount of $10,558.74. The Commissioner rejected this claim for abatement in his letter dated December 19, 1925.

We are of the opinion that the respondent has determined a deficiency in tax for the fiscal year ended March 31, 1921, and that we have jurisdiction of the appeal covering that year.

The petitioner alleges errors by the respondent in (1) disallowing a deduction of $5,000 as exhaustion of a contract acquired by the issuance of stock; (2) disallowing a deduction of $1,000 as exhaustion of a lease acquired by the issuance of stock; (3) refusing to include the above lease in invested capital at a value of $20,000; (4) disallow-

ing a deduction of $33,866.28 as exhaustion of another lease; (5) in refusing to compute the petitioner's profits taxes under the special assessment provisions; (6) reducing petitioner's invested capital for 1921, and (7) reducing invested capital for 1921 by $42,579.45, balance sheet changes made by the revenue agent in report dated January 19, 1925.

1. On March 10, 1917, the petitioner purchased from Edward E. Powell for $25,000 par value of its capital stock, a five-year contract by the terms of which the petitioner was to acquire not less than 100,000 tons of coal annually from the Bernicedale Coal Co. at $2.75 per ton. The market price of coal on March 10, 1917, was $3 to $3.25 per ton. The evidence shows that on March 10, 1917, the date the contract was acquired, and on August 14, 1917, the date the petitioner paid $25,000 par value of stock therefor, the stock of the petitioner was worth its par value. We have found that the contract had a value, when acquired, of $25,000, and in accordance with section 234(a) (7) of the Revenue Act of 1918, we hold that the respondent erred in failing to allow a deduction of $5,000 for the exhaustion thereof in the fiscal year in question.

2. The petitioner also acquired from Edward E. Powell for $20,000 par value of its capital stock, a lease of certain property containing wood coal pockets. The lease was to run 5 years from January 1, 1921. The evidence discloses that the lease was reasonably worth not less than $20,000 and we have so found. In *Grosvenor Atterbury*, 1 B. T. A. 169, we held that the owner of a leasehold is entitled to take deductions for exhaustion of such leasehold in the same manner as he would with any other exhaustible property.

Since the petitioner possessed the lease from January 1, 1921, for the fiscal year ended March 31, 1921, petitioner is entitled to exhaustion thereof in the amount of $1,000 for the three-month period. Section 234 (a) (7) Revenue Act of 1918.

3. Section 325 (a) of the Revenue Act of 1918 provides:

That as used in this title—

\*          \*          \*          \*          \*          \*          \*

The term "tangible property" means stocks, bonds, notes, and other evidences of indebtedness, bills and accounts receivable, leaseholds, and other property other than intangible property.

Section 326 (a) of the Revenue Act of 1918 provides:

That as used in this title the term "invested capital" for any year means (except as provided in subdivisions (b) and (c) of this section) :

\*          \*          \*          \*          \*          \*          \*

(2) Actual cash value of tangible property other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the

satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus. * * *

The respondent relied upon section 331 of the Revenue Act of 1918, and refused to include in invested capital any value for this lease upon the grounds that Powell owned more than 50 per cent of the stock of the petitioner. However, the evidence discloses that neither before nor after the transaction did Powell own as much as 50 per cent of the stock.

We are of the opinion that the lease in question had an actual cash value of not less than $20,000, and the respondent erred in not including it in invested capital at that value, leaseholds being defined as " tangible property " by the section of the statute quoted above.

4. Among the assets of the Frank H. Beach Co. which the petitioner acquired from Edward E. Powell for $100,000 cash on July 9, 1919, was a lease by the Delaware & Hudson Railroad Co. for the property upon which the business of the Frank H. Beach Co. was located. The petitioner also assumed the liabilities of the company. The lease was for the period July 1, 1919, to June 30, 1920, and the amount which petitioner paid for the lease was $70,554.75. With this lease also went the exclusive agency for the sale of the Hudson Coal Co.'s coal in that territory. The agency agreement was oral and was for the life of the lease.

The remaining life of the lease after petitioner obtained it was 354 days. Ninety-one days of this life fell within the taxable year in controversy. We are of the opinion that the petitioner is entitled to a deduction of $18,136.95 for exhaustion of the lease. See *Grosvenor Atterbury, supra.*

5. The respondent, in accordance with section 331 of the Revenue Act of 1918, refused to allow for invested capital purposes any value for the contract with the Bernicedale Coal Co. for which the petitioner paid Edward E. Powell $25,000 par value of its capital stock, for the reason that immediately after the transfer Powell owned more than 50 per cent of the stock of the petitioner.

The petitioner contends that this entitles it to relief by special assessment. In our opinion the exclusion of the value of the contract, considered in connection with the considerable admitted invested capital of the petitioner, does not show a right to special assessment. We conclude that special assessment was properly denied by the respondent.

6 and 7. The petitioner has apparently abandoned the last two assignments of error, and, in the absence of evidence in regard thereto, the holding of the respondent will not be disturbed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*