TROY O. MELTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Melton v. Commissioner
Docket No. 7534-78.
United States Tax Court
T.C. Memo 1979-488; 1979 Tax Ct. Memo LEXIS 32; 39 T.C.M. (CCH) 635; T.C.M. (RIA) 79488; December 6, 1979, Filed Troy O. Melton, pro se. Robyn R. Jones, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of $1,145.01 in petitioner's 1976 Federal income tax. [1] The only question presented is whether petitioner is exempt from the tax on self-employment income under section 1402(h) [2] as a conscientious objector to Social Security. *34 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time he filed his petition in this case, petitioner Troy O. Melton resided in Ada, Okla.
Petitioner sells property insurance and real estate. He is 68 years old, has been self-employed for most of his life, and has had income from self-employment for at least the last 25 years. Petitioner's net self-employment income for 1976 was $14,493.78. Petitioner reported the above self-employment income on a completed Form 1040SE, Computation of Social Security Self-Employment Tax, which showed a self-employment tax in the amount of $1,145.01. Petitioner filed Form 1040SE as part of his 1976 return. However, petitioner did not include the self-employment tax in the total tax due nor did he pay any self-employment tax for 1976. Instead, he footnoted his Form 1040SE with the following statement: "The above self-employment tax is computed per Bureau regulations, however, the taxpayer declines to remit for personal reasons previously stated." With the utmost sincerity and honesty, petitioner conscientiously objects to the Social Security system, of which the self-employment tax is a part. *35 Petitioner does not sell any life or health insurance, nor is he himself so insured. He believes Social Security is fraudulent, morally bankrupt, and weakens our national will by encouraging dependence on the state. Throughout his working life he has steadfastly refused to pay into Social Security voluntarily, but there are indications in the record respondent has had some success with other means of collection. To support his refusal to pay self-employment taxes, in October 1977 petitioner filed an Application for Exemption from Tax on Self-Employment Income and Waiver of Benefits (Form 4029, hereinafter Application) with the Internal Revenue Service Center at Austin, Tex. In his Application, petitioner stated he had been a member of "The Church of Fiscal Responsibility" (hereinafter sometimes "Church") since "The beginning of SS," and as a follower of his faith's teachings he was conscientiously opposed to accepting death, disability, medical, or retirement benefits from any private or public insurance including Social Security. He verified his membership in the "Church" by also signing his Application as the pastor of "The Church of Fiscal Responsibility." Petitioner is *36 not a formally ordinaed minister. As he stated at trial: "I ordained myself in this case." "The Church of Fiscal Responsibility" is not incorporated in or registered with the State of Oklahoma. In fact, petitioner admittedly created the "Church" in 1977 to enable him to complete his Application, which requires the name of a church. The "Church" has only one member, petitioner, and is located at petitioner's personal residence. According to petitioner, the established teachings of "The Church of Fiscal Responsibility" are: "To make you own way. Pay your own bills and ask nobody for their gratuity. Earn everything you get in this life." The "Church" does not make any provisions for its dependent members. Despite the depth and sincerity of his convictions, petitioner plainly regards his "Church" as a bit of humor injected into his life-long struggle against inclusion in the Social Security system. Petitioner is not a member of any other faith which objects to the receipt of death, disability, or retirement benefits. In February 1978 petitioner's Application was disapproved by the Director of the Austin Internal Revenue Service Center on the ground the Application was not timely *37 filed. At trial respondent additionally contended petitioner's "Church" would not qualify him for exemption in any event. In his statutory notice, respondent determined petitioner's tax should be increased by the $1,145.01 in self-employment taxes petitioner computed on Form 1040SE, which he filed with his return under protest. [3]
OPINION The issue in this case is whether petitioner is liable for the tax on self-employment under section 1401 or is exempt under section 1402(h) as a conscientious objector to Social Security. Petitioner admits he earned $14,493.78 of self-employment income, sec. 1402(b), in 1976. At the outset we note petitioner does not claim exemption as a minister, church member, or Christian Science practitioner under section *38 1402(e). [4] That section would not apply in any case because petitioner's net income was not earned for ecclesiastical services--he sold insurance and real estate--and petitioner is not duly ordained, commissioned, or licensed. He ordained himself in a "church" he made up. He has no flock, conducts no services, and performs no sacerdotal functions. *39 Petitioner relies on section 1402(h). [5] Briefly, section 1402(h) exempts from the self-employment tax individuals who by reason of their religious faith are conscientiously opposed to the acceptance of any benefits of private or public death, disability, or retirement insurance. H. Rept. No. 213, 89th Cong., 1st Sess., 1965-2 C.B. 733, 753-755. See Palmer v. Commissioner,52 T.C. 310 (1969). *40 Respondent first argues petitioner's Application was not timely. Petitioner contends his Application was very timely and was based on more than twenty years of resistance. We agree with respondent. Section 1402(h) (2) provides: Time for Filing Application.--For purposes of this subsection, an application must be filed-- (A) In the case of an individual who has self-employment income (determined without regard to this subsection and subsection (c)(6)) for any taxable year ending before December 31, 1967, on or before December 31, 1968, * * * Because petitioner admits he had self-employment income prior to 1967, any application filed in 1969 or thereafter would be untimely. See S. Rept. No. 744, 90th Cong., 1st Sess., 1968-1 C.B. 706, 714-715 (1967). His 1977 Application was clearly untimely. Respondent also argues petitioner would not qualify under section 1402(h) (1) in any case. Petitioner argues that he is and always has been conscientiously opposed to Social Security and that his "Church" is just as valid as any other. We agree with respondent. Section 1402(h) (1) permits exemption from the self-employment tax only if established tenets of religious *41 faith underlie an individual's conscientious objections to receiving insurance benefits. Petitioner does not meet this test because the record clearly shows his conscientious objections are not based on religious beliefs. Moreover, section 1402(h) (1) (D) and (E) requires the Secretary of Health, Education, and Welfare to find (1) that the religious sect or division of an applicant for exemption provides reasonable care for its dependent members and (2) that the sect or division has existed continuously since 1950. Petitioner has not shown the Secretary of Health, Education, and Welfare has made any such findings. In fact, "The Church of Fiscal Responsibility" admittedly makes no provision for its dependent members and was not in existence before 1977. We therefore hold petitioner is not exempt from the self-employment tax under section 1402(h). Petitioner strongly argues that to the extent section 1402(h) does not apply to him, it violates the First Amendment to the Constitution. We do not take petitioner's constitutional objections lightly. He essentially argues that his conscientious objections to Social Security are as valid and as deeply held as any religious feelings, *42 and that section 1402(h) is thus impermissibly narrow in scope. [6] However, we have upheld the constitutionality of section 1402(h) in Palmer v. Commissioner,supra; Henson v. Commissioner,66 T.C. 835 (1976); and numerous Memorandum Opinions of this Court. [7] Furthermore, in this particular case section 1402(h) does not interfere with petitioner's free exercise of his religion; section 1402(h) offends his sense of right and wrong by not including him within its exemption. We recognize the exemption in section 1402(h) is drawn narrowly, but, as our prior decisions indicate, we do not think the statute is arbitrary or irrational. Palmer v. Commissioner,supra;Henson v. Commissioner,supra.We therefore adhere to our view section 1402(h) is constitutional. *43 To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Respondent's notice of deficiency was addressed to both Troy O. Melton, and his wife "Gearldine" (so appears typed on their return which she signed "Geraldine"). However, only Troy O. Melton has elected to contest respondent's determination in this Court. ↩
2. Unless otherwise indicated all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue. Former sec. 1402(h) is now redesignated sec. 1402(g). Tax Reform Act of 1976 (tit. XIX, Deawood Provisions), sec. 1901 (a) (155) (B), 90 Stat. 1789.↩
3. Respondent's notice of deficiency was proper inasmuch as we have long held that a disputed tax is not "shown as tax by the taxpayer or his return" as those terms are used in sec. 6211(a). Penn Mutual Indemnity Co. v. Commissioner,32 T.C. 653, 654 n. 2, 667-668 (1959), affd. 277 F.2d 16 (3d Cir. 1960); Continental Accounting & Audit Co. v. Commissioner,2 B.T.A. 761↩ (1925).
4. (e) Ministers, Members of Religious Orders, and Christian Science Practitioners.-- (1) Exemption.--Any individual who is (A) a duly ordinaed, commissioned, or licensed minister of a church or a member of a religious order (other than a member of a religious order who has taken a vow of poverty as a member of such order) or (B) a Christian Science practitioner, upon filing an application (in such form and manner, and with such official, as may be prescribed by regulations made under this chapter) together with a statement that either he is conscientiously opposed to, or because of religious principles he is opposed to, the acceptance (with respect to services performed by him as such minister, member, or practitioner) of any public insurance which makes payments in the event of death, disability, old age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act), shall receive an exemption from the tax imposed by this chapter with respect to services performed by him as such minister, member, or practitioner.↩ * * * [Emphasis added.]
5. Sec. 1402(h) Members of Certain Religious Faiths.-- (1) Exemption.--Any individual may file an application (in such form and manner, and with such official, as may be prescribed by regulations under this chapter) for an exemption from the tax imposed by this chapter if he is a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act). Such exemption may be granted only if * * * and only if the Secretary of Health, Education, and Welfare finds that-- (C) such sect or division thereof has the established tenets or teachings referred to in the preceding sentence, (D) it is the practice, and has been for a period of time which he deems to be substantial, for members of such sect or division thereof to make provision for their dependent members which in his judgment is reasonable in view of their general level of living, and (E) such sect or division thereof has been in existence at all times since December 31, 1950.↩
6. We therefore treat petitioner's argument as also embracing the fifth amendment↩ claim that sec. 1402(h) is without rational basis for discriminating against him and violates due process. See U.S. Const. amend. V. 7. E.g., Stoffels v. Commissioner,T.C. Memo. 1979-295; Stewart v. Commissioner,T.C. Memo. 1979-287; Jaggard v. Commissioner,T.C. Memo. 1978-78, affd. 582 F.2d 1189 (8th Cir. 1978); Hatcher v. Commissioner,T.C. Memo. 1978-59, affd.     AFTR2d    , 79-2↩ USTC par. 9531 (10th Cir. 1979).