SIEGEL et al. v. UNITED STATES.
No. 42616.

Court of Claims.
April 5, 1937.

Harry S. Hall, of New York City, for plaintiffs.

Elizabeth B. Davis, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

The principal question in this case is whether this suit was barred at the time it was instituted. We are of opinion that

it was not. Section 403 (b) (2) and (3) of the Revenue Act of 1921 provided, so far as pertinent here, as follows:

"In the case of a nonresident, by deducting from the value of that part of his gross estate which at the time of his death is situated in the United States * * * an amount equal to the value of any property forming a part of the gross estate situated in the United States of any person who died within five years prior to the death of the decedent where such property can be identified as having been received by the decedent from such prior or decedent by gift, bequest, devise, or inheritance, or which can be identified as having been acquired in exchange for property so received: Provided, That this deduction shall be allowed only when an estate tax under this or any prior Act of Congress was paid by or on behalf of the estate of such prior decedent, and only in the amount of the value placed by the Commissioner on such property in determining the value of the gross estate of such prior decedent, and only to the extent that the value of such property is included in that part of the decedent's gross estate which at the time of his death is situated in the United States and not deducted under paragraphs (1) or (3) of subdivision (b) of this section. This deduction shall be made in case of the estates of all decedents who have died since September 8, 1916. * * *

"In the case of any estate in respect to which the tax has been paid, if necessary to allow the benefit of the deduction under paragraphs (2) and (3) of subdivision (a) or (b) the tax shall be redetermined and any excess of tax paid shall be refunded to the executor."

■ These provisions were continued without change in the Revenue Act of 1924 (section 1100 (c), 43 Stat. 352), and in the Revenue Acts of 1926, 1928, 1932, and 1936, and remain in force at the present time. Section 403 of the Revenue Act of 1921 became effective November 23, 1921, more than five years after the passage of the Revenue Act of 1916, and the same provisions in the Revenue Act of 1924 became effective eight years after the passage of the Revenue Act of 1916. No change was made in the Revenue Act of 1926, which became effective ten years after the enactment of the estate tax provision of the 1916 act, and such retroactive provisions quoted above remain in force at the present time. Since their enactment these provisions have directed that a deduction of the value of property previously subjected to an estate tax within five years shall be made in case of the estates of all decedents who have died since September 8, 1916, and that, in the case of any estate in respect to which the tax has been paid, if necessary to allow the benefit of the deduction the tax shall be redetermined and any excess tax paid shall be refunded to the executor. These provisions clearly made the excess tax previously paid an overpayment within the meaning of other sections of the same statutes, and they were, we think, directed in the first instance to the officials of the Treasury Department charged with the duty of administering the revenue laws. The direction, that in determining the value of a net estate there should be deducted therefrom the value of any property that had been subjected to an estate tax within five years, first appeared in section 403 (a) (2) and (b) (2) of the Revenue Act of 1918 (40 Stat. 1098) which became effective February 25, 1919, but that section was not retroactive and applied only to those cases where the second decedent died after February 24, 1919. In the Revenue Act of 1921 the provision for the deduction was made retroactive to September 8, 1916, and in the case of any estate in respect of which the tax had already been paid Congress directed that the officials charged with the duty of determining, assessing, and collecting taxes, and the refunding of excess taxes paid, should, if necessary to allow the benefit of the deduction under section 403 (b) (2) and (3), redetermine the tax and refund the excess to the executor. It is clear from these sections that Congress intended that all estates which had paid a tax by reason of the inclusion in the net estate of property which had been previously taxed within five years should be entitled to have the benefit of this deduction, the tax redetermined and the excess tax refunded without regard to the limitation of time within which the Commissioner of Internal Revenue could make a refund without claim, or the time within which claims for refund could be filed under section 3228, Revised Statutes (26 U.S.C.A. § 1433). The Commissioner has correctly so held in article 99 of Regulations 70.

■ Thus far the parties are in accord as to the statute of limitation feature. But counsel for the defendant insists that for the purpose of suit to recover any overpayment resulting from the failure of any estate to receive the benefit of a deduction for property previously taxed within five years where the second decedent died prior to the effective date of the estate tax provisions of the Revenue Act of 1918, the limitation period is six years from November 23, 1921, the date of enactment of section 403 of the Revenue Act of 1921, and that since this suit was not instituted within six years after that date it is barred. In other words, counsel for defendant contends that the provisions of section 3226, Revised Statutes, as amended by section 1014 (a) of the Revenue Act of 1924 (43 Stat. 343) allowing a suit to be brought for the recovery of a tax within two years after the disallowance by the Commissioner of a refund, do not apply to the retroactive provisions of section 403. This position seems to be based on the theory that courts audit returns, determine net estates, and make refunds; that a suit to recover an internal revenue tax is, in effect, an appeal from the Commissioner's decision on a claim for refund and that since the obvious purpose and intent of section 403 of the Revenue Act of 1921, which was continued in force in subsequent revenue acts, were to require a return of the excess tax paid by reason of the failure of an estate to receive the benefit of a deduction provided therein without regard to other provisions requiring the filing of a formal claim for refund within a specified time, the provisions of section 3226 of the Revised Statutes with reference to suit must likewise be discarded in such case. In this we think counsel is in error. The statute, while plainly inconsistent with section 3228, evidences no purpose on the part of Congress to disregard the provisions of section 3226, or any other provision of law, requiring the Commissioner, in the first instance, to audit returns, determine tax liability, and to make refunds of overpayments determined in accordance with the statutes. Statutory provisions found in general revenue statutes of the character with which we are here concerned must be viewed and interpreted in the light of the obvious policy of Congress in their enactment and the well-recognized procedure of the Treasury Department and the courts in their administration and enforcement. By enactment of this retroactive provision in the estate tax title of the Revenue Act of 1921, which was continued in all subsequent revenue acts, Congress clearly intended, we think, that the Commissioner of Internal Revenue should, with or without a formal claim, redetermine the tax of estates of all decedents dying prior to February 25, 1919, that had not received the benefits of the deduction of property which had been taxed within five years and refund any overpayment found to have been made on that account, and that, in the event of his refusal to refund any such tax, suit might be brought within two years after such refusal or disallowance of a refund. Although section 3226 of the Revised Statutes speaks of suits for the recovery of taxes alleged to have been erroneously or illegally assessed or collected, to the filing of claims therefor, and to the institution of suits within two years after the disallowance of the part of such claim to which such suits relate, we find no difficulty in the circumstances in applying the limitation provisions of that section to suits for the recovery of an overpayment of a character here involved.

■ Statutes should have a reasonable construction and the language must be interpreted with reference to the subject-matter and the general course of business to which they relate and in such manner that the beneficent provisions of remedial laws may not be thwarted by nice technicalities obviously not within the minds of the legislators. In Maul v. United States, 274 U.S. 501, 508, 47 S.Ct. 735, 738, 71 L.Ed. 1171, the court said "In this situation effect should be given to the familiar rule that in construing altered revenue laws 'the whole system must be regarded in each alteration, and no disturbance allowed of existing legislative rules of general application beyond the clear intention of Congress.'" Although the tax here in question was not an overpayment at the time it was assessed and paid, the retroactive provisions in section 403 relating to estate taxes generally made such tax an erroneous exaction and specifically directed its return to the taxpayer. Thus, the statute, while not denying to the taxpayer the right to make a demand or file a claim for such tax, took the place of a claim required by other

provisions relating to refunds of internal revenue taxes generally, thereby leaving unimpaired the taxpayer's right, upon the Commissioner's refusal to make a refund or upon his disallowance of a demand or claim, to institute suit within two years after the Commissioner's disallowance. Any other conclusion would thwart the purpose of the statute. Surely Congress did not intend to force all such taxpayers directly into court without giving the Commissioner an opportunity to act on the cases in the usual and ordinary way. Such a conclusion would result in holding that the preservation of the same retroactive provisions in the Revenue Acts of 1924 to 1936, inclusive, was for the most part a vain act and accomplished nothing.

In the case at bar the Commissioner of Internal Revenue disallowed and refused to make the refund to the estate of Marie Siegel on May 6, 1932. This suit was instituted within two years thereafter. It was, therefore, not barred at the time the petition was filed.

■ The next question is whether interest is allowable. Counsel for defendant insists that interest may not be allowed, citing Sunny Brook Distillery Co. v. United States, 48 F.(2d) 976, 72 Ct.Cl. 157. We think that case is distinguishable from the one at bar. The Sunny Brook Case arose under a special act of Congress February 11, 1925, which was not a part of a general revenue statute. This special act authorized the Commissioner to return to distillers, upon claim, the difference between a tax of $6.40 and $2.20 per proof gallon on any distilled spirits theretofore produced and then owned by such distiller and stored on the premises of the distillery where produced. That statute was based upon special circumstances not present here. The higher tax had been imposed upon the manufacturer of distilled spirits at a time when the manufacture and sale thereof were legal but the sale of which had been outlawed by constitutional amendment about a year later.

In the case at bar, the statutory provision with which we are concerned was enacted as a part of a continuing general revenue statute of long standing. In the Revenue Act of 1918 a change was made in the law with reference to deductions to be made in determining the value of a net estate subject to tax and in the Revenue Act of 1921, when such provision was being re-enacted, the Congress made it retroactive to September 8, 1916, and required that it be applied in the case of estates of all decedents who had died since that time and that any tax that had been paid, by reason of failure of such estates to receive the benefits of such deductions, should be refunded. The provision was inserted as a Senate amendment and was agreed to in conference. Nothing was said indicating a purpose that interest provided for under other provisions of the same statute should not be paid on such refunds and we may not read into section 403 a condition which is not justified by the language used. Maul v. United States, supra. The retroactive language of the section made the excess tax paid in a prior year, because of the failure to receive the benefit of the deduction therein provided, an overpayment and an erroneous exaction within the meaning of other provisions of the same and subsequent statutes in which these terms are found. In the absence of words to express a different purpose the interest provisions of the statutes containing the provision allowing a deduction for property previously taxed within five years should be held applicable to all overpayments and refunds arising thereunder. As early as April, 1923, it was held that interest was payable on refunds under section 403. 2 Decs.Comp.Gen. 684. Provisions similar to the retroactive provisions of section 403 may be found in the revenue statutes, such as section 284 (c) of the Revenue Act of 1926 (44 Stat. 66), directing the refund, without a claim, of excess taxes paid for previous years by reason of the failure of the taxpayer to take adequate deductions in such previous years for depreciation. So far as we have been able to find, it has never been contended that in such cases interest on such overpayments was not allowable. When Congress has desired that interest be not paid on an overpayment or excess collection authorized or provided for in a general revenue statute containing also provisions for the payment of interest on refunds, it has specifically so directed. See section 325 of the Revenue Act of 1926 (44 Stat. 87).

Section 1116 (a), 44 Stat. 119, which governs this case, provides that upon the allowance of a refund interest shall be allowed and paid on the amount thereof at the rate of 6 per cent. per annum from

776

the date of payment. In the circumstances of this case we think the provisions of that section apply to the overpayment here involved and that plaintiffs are entitled to interest.

Judgment will be entered in favor of plaintiffs for $23,577.70 with interest at 6 per cent. per annum thereon as provided by law. It is so ordered.